UNITED STATES DISTRICT COURT

THE DISTRICT OF OREGON

SELECTMETRICS, INC.,

                Plaintiff,                Civil No. 04-412-HA

                                                OPINION AND ORDER

NETRATINGS, INC.
                Defendant.
_____

HAGGERTY, Chief Judge:

      This litigation arises out of alleged breaches of duty owed by defendant Netratings, Inc., to plaintiff SelectMetrics, Inc., pursuant to a "Hosted Service Distribution Agreement" (the Agreement) between the parties. Under the Agreement, plaintiff granted defendant a non-exclusive right to distribute software licenses permitting defendant's customers to use plaintiff's software. In exchange, defendant agreed to pay plaintiff a royalty, to use its best efforts to market and sell such licenses in China, and agreed not to translate or "reverse engineer" the

1  -  OPINION AND ORDER

software.

Plaintiff filed a Complaint alleging that defendant breached its obligations to make minimum royalty payments, to use its best efforts to sell the software licenses in China, and to refrain from translating or reverse engineering the software. Defendant asserted several affirmative defenses: that plaintiff's claims are barred by the doctrines of estoppel, waiver, good faith and fair dealing, unclean hands, and payment; excused because of plaintiff's breach; and barred in whole or in part by the Agreement, plaintiff's termination of the Agreement, and plaintiff's failure to mitigate.

Discovery was completed in April 2005. On September 28, 2005, plaintiff and defendant each filed Motions for Summary Judgment.

In January, 2006, this court granted plaintiff's Motion for Leave to Amend the Complaint. Plaintiff dismissed its claims for equitable relief, moved the specific breaches alleged in Counts Two and Three into Count One, and added an allegation of breach under § 11.1 of the Agreement for improper termination.

Subsequent to the filing of the Amended Complaint, defendant was permitted to file a Supplemental reply Brief in support of its Motion for Summary Judgment, and plaintiff was permitted to file a Supplemental Response in opposition. Oral argument on both motions was heard on April 21, 2006.

## **BACKGROUND**

The parties wished to jointly develop, license and distribute specialized software later called "SiteCensus." The SiteCensus software measured internet web site audience size.

In December 2002, plaintiff and defendant entered into an agreement titled "Product

Development, Web Site Hosting and Distribution Agreement" (Development Agreement). Per the Development Agreement, plaintiff developed software that defendant would market to its customers. The parties agreed to a revenue sharing arrangement supplemented with a formula for calculating certain minimum royalty payments. This formula was subject to confirmation or revision every three months. The parties confirmed the continued validity of the formula on May 15, August 15 and November 15, 2003.

In the summer of 2003, poor sales threatened plaintiff's ability to continue to support the SiteCensus software. Mr. Aaron Starr, then plaintiff's Vice President of Engineering, offered to acquire a majority interest and to continue to support SiteCensus, ostensibly to allow defendant time to close license agreements for SiteCensus and generate cash for operations.

Starr proposed replacing the existing Development Agreement with a new agreement. On September 12, 2003, Starr sent a written Memorandum of Terms proposing terms for a new agreement to replace the Development Agreement. The parties subsequently executed the Agreement, which became effective as of November 26, 2003. This Agreement is the focus of this lawsuit.

The Agreement established that plaintiff would receive royalties, including a guaranteed minimum royalty. "The minimum royalty payment that Distributor [defendant] shall make to Owner [plaintiff] with respect to Net Revenues generated" was established as $9,000 per international customer for one year of service for 500 million page views. Amended Complaint, Ex. 1 (the Agreement) at 12. Additional royalties would be charged for page views in excess of 500 million. Net revenue is defined as "all monetary amounts that are received by Distributor from the sale or distribution of Licenses" minus taxes, duties, etc. *Id*. at 2.

3  -  OPINION AND ORDER

The Agreement also contained a clause establishing that except as expressly provided, plaintiff makes no other warranties of any kind and the software is "provided as-is." *Id.* at 6. Plaintiff expressly disclaimed any implied warranties of merchantability or fitness.

A Limitation of Liability clause was contained in the Agreement at § 10.1, providing that

> neither party shall be liable for any indirect, incidental, special or consequential damages (including but not limited to damages for lost profits or lost revenues), regardless of the form of action, whether in contract, tort (including negligence) or otherwise, and regardless of whether such party has been informed of the possibility or likelihood of such damages. . . . [T]he aggregate liability of either party under or arising out of the Agreement shall be limited to the amounts paid and amounts due and owing by distributor during the 12 months immediately preceding accrual of the claim upon which liability is based.

*Id.* at 7.

Plaintiff claims that the parties intended that the Agreement applied equally to contracts between defendant and its customers whether executed before or after November 26, 2003, and was never amended after being executed by the parties.

Defendant entered into licensing contracts with the top internet providers in China for the use of plaintiff's software. These contracts commenced in December 2003 and January 2004. The China clients complained to defendant that the software was not working properly. Defendant communicated these complaints to plaintiff.

On or about December 22, 2003, defendant acquired the majority of shares in RedSheriff software, which produced software that competed directly with SiteCensus.

On January 28, 2004, plaintiff released to defendant a JavaScript to correct the data collection problems reported by the China clients. Plaintiff asserts that defendant failed to encourage its China clients to implement the JavaScript fix, and instead directed them to switch

4  -  OPINION AND ORDER

to RedSheriff products.

On February 16, 2004, Hans Yu, Managing Director of NetRatings' China business, sent an e-mail to Richard Webb, President of NetRatings' Asia Pacific and Latin America region, which stated that there was improvement with the JavaScript, but that "we haven't asked top clients upgrade it [sic]." Decl. of Paul M. Murphy (Murphy Decl.), Ex. 1 at p. 20.

In February 2004, Mr. Webb and Mr. Yu visited the China clients to listen to the concerns about SiteCensus and to answer questions about defendant's purchase of RedSheriff. The evidence indicates that defendant also discussed the merits of RedSheriff's software and the process of transferring clients from SelectMetrics to RedSheriff.

After the February 2004 meeting, defendant made plans to send an engineer to China to help four top Chinese clients transfer to RedSheriff software, pledged to present RedSheriff to all new clients, and halt all SelectMetrics implementation. Murphy Decl., Ex. 1 at 10-11. Defendant noted that the "real issue" was the contract with plaintiff and that it needed to "exit the contract." *Id.* at 21.

On March 1, 2004, Mr. Yu contacted Mr. Webb, expressing concern that clients would not wait for RedSheriff and would soon upgrade the SelectMetrics JavaScript. Murphy Decl., Ex. 1 at p. 25. Mr. Webb replied that "we should definitely not install the new SM [SelectMetrics] JS [JavaScript] at this stage." *Id*.

On March 1, 2004 plaintiff submitted a demand for payment under the Agreement, and provided defendant notice under § 11.1(I) of the Agreement that defendant was in material breach and that the Agreement would terminate in thirty days if payment was not forthcoming. Affidavit of Aaron Starr, Ex. 5. On March 5, 2004 defendant responded with a letter terminating

5 - OPINION AND ORDER

the contract effective immediately.  Decl. of Elizabeth Goldberg, Ex. 4 at 3-4.  Plaintiff ceased providing services on April 1, 2004.

Plaintiff moves for summary judgment on the issue of defendant's liability, and defendant moves for summary judgment against all of plaintiff's claims.

**STANDARDS**

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial.  Fed. R. Civ. P. 56(c).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Such an issue of fact is only a genuine issue if it can reasonably be resolved in favor of either party.  *Anderson*, 477 U.S. at 250-51.  This burden to demonstrate a genuine issue of fact increases where the factual context makes the non-moving party's claim implausible.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Mere disagreement or the bald assertion that a genuine issue of material fact exists no longer precludes invoking summary judgment.  *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).  In other words, "[w]hen the

6  -  OPINION AND ORDER

moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (footnote omitted).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## ANALYSIS

Defendant argues that any liability it may have is limited under § 10.1 of the Agreement to royalties owed.  Defendant asserts the Agreement establishes that royalties are calculated as a percentage of the net revenue, which is defined as money received by defendant minus any taxes, duties, fees, or tariffs.  Because it received no payment from the China clients, there are no royalties owed.  Plaintiff argues that defendant breached the Agreement, owes damages for those breaches, and that minimum royalties are not tied to net revenue and are owed as a matter of law.

The court finds that on or about December 22, 2003, when defendant acquired the competing software RedSheriff, defendant breached its agreement to use best efforts to market plaintiff's software.  The evidence shows that defendant ceased marketing SiteCensus at that time and over the next few months implemented a plan to switch customers from SiteCensus to RedSheriff.

The recovery for these breaches by defendant is limited under § 10.1 of the Agreement to royalties owed.  This limitation of liability clause applies expressly to actions brought in contract.         Section 11.2 provides that all of defendant's rights under the Agreement shall automatically terminate upon a breach of any term of the Agreement by defendant.  Plaintiff argues that under this clause, defendant's right to exercise § 10.1 was automatically terminated immediately upon defendant's breach.

7  -  OPINION AND ORDER

The limitation of liability clause is not a right of defendant that is lost under § 11.2. Section 10.1 applies to a breach of contract by its express terms, and was included in the Agreement to limit liability in the event of this type of breach by defendant. Section 11.2 establishes that defendant automatically loses the rights to distribute the software and collect revenue upon a breach, but does not extinguish the limitation of liability clause.

Because recovery is limited to royalties owed, the court must interpret the royalty clauses of the Agreement. There are two royalty calculations in the Agreement: (1) under § 3.1 defendant shall pay plaintiff sixty percent of net revenue; and (2) under § 3.3 defendant shall pay plaintiff a minimum royalty with respect to revenues generated, the calculation of which is set forth in Exhibit A. Net revenue is defined in the Agreement as all monetary amounts that are received by defendant from the sale or distribution of the licenses, less amounts collected for taxes, duties, or tariffs and amounts refunded to customers. Amended Complaint, Ex. 1 at 2.

There is no evidence in the record that defendant received any monies from the China clients under the license distribution at issue in this case. Accordingly, the applicable net revenue in this case is zero. Under § 3.1 defendant owes plaintiff nothing. The parties dispute the calculation of minimum royalties under § 3.3 and Exhibit A.

Plaintiff argues that minimum royalties under the Agreement represent a floor amount due and owing to plaintiff regardless of the receipt of net revenue, calculated solely by the number of contracts and page views as set forth in Exhibit A. Plaintiff was a struggling company and required guaranteed minimum royalties to reimburse it for the costs of providing the service. Plaintiff asserts that it would never have agreed to a contract in which no minimum royalties would be paid in the event the customer refused to pay defendant. This is because

8 - OPINION AND ORDER

plaintiff had no authority to establish the sales price or collect from the customer. Defendant had the exclusive authority to set the price it charged customers, and was the sole party with the necessary information and authority to collect from the customers. Moreover, plaintiff argues that the Agreement was designed to ensure plaintiff could stay in business for several months until the China market was penetrated. Defendant is a larger, wealthier company that assumed the risk of nonpayment by clients because it was in the financial position to do so.

When interpreting a contract provision, the court must first look at the language of the document itself. *Yogman v. Parrott*, 937 P.2d 1019, 1021 (Or. 1997). If the language is unambiguous, the analysis stops and the court construes the contract as a matter of law. *Id*. (citation omitted). If the term is ambiguous, the court proceeds to review extrinsic evidence of the intent of the parties. *Id*. at 1022 (citation omitted).

Exhibit A of the Agreement states that the "minimum royalty payment that [defendant] shall make to [plaintiff] *with respect to Net Revenue*s *generated* both inside and outside the United States shall be . . ." Amended Complaint, Ex. 1 at 12. Although it can be argued that the phrase "with respect to" is ambiguous, the court finds the term to be unambiguous as used in the Agreement. As such, the court interprets the term as a matter of law, without reference to extrinsic evidence or the intent of the parties. *Yogman*, 937 P.2d at 1021. The court is compelled to find that minimum royalties under the Agreement are tied to net revenues. It is undisputed that net revenues are zero. Accordingly, despite egregious breaches by defendant, the court is constrained to conclude that under the terms of the Agreement the amount owed by defendant for those breaches is zero.

**CONCLUSION**

For the foregoing reasons, defendant's Motion for Summary Judgment [42] is GRANTED and Plaintiff's Motion for Summary Judgment [51] is DENIED. The claims against defendant are dismissed with prejudice.

IT IS SO ORDERED.

DATED this  25   day of April, 2006.


    ____/s/   Ancer L. Haggerty_____
    ANCER L. HAGGERTY
    United States District Judge